### THE NELLIE FOLLETTE.

### THE ELMER D. WALLING.

#### (District Court, W. D. New York. May 25, 1914.)

Collision ⬤══91—Meeting Tows in Canal—Negligent Navigation at Bend.

> A collision between canal boats on the Erie Canal *held*, on the evidence, due solely to the fault of a steam canal boat and a push boat rigidly fastened in front of her, for negligent navigation at a bend, by reason of which the push boat, instead of rounding the bend close to the bank, passed across and came into collision with the leading one of the three meeting boats.

> [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 187–192; Dec. Dig. ⬤══91.]

In Admiralty. Suit for collision by William Van Order, individually and as bailee of the cargo of the canal boat Patrick Bowen, with Jacob H. Halsted and Thomas H. Story as intervening petitioners, against the steam canal boat Nellie Follette and the push boat Elmer D. Walling, William H. Follette and Stewart J. Dailey, claimants and respondents, and Benjamin L. Rand, intervener. Decree against the Follette and Walling.

George Clinton, Jr., of Buffalo, N. Y., for libelant and intervener.
Brown, Ely & Richards, of Buffalo, N. Y., for cargo owners.
White & Stanley, of Buffalo, N. Y., for claimants and respondents.

HAZEL, District Judge. The libelant, William Van Order, individually and as bailee of 8,000 bushels of corn aboard the canal boat

Patrick Bowen, originally filed this libel against the push boat Elmer D. Walling and the steam canal boat Nellie Follette for damages arising out of a collision between the Bowen and the Follette and their respective consorts, occurring on October 8, 1910, in the Erie Canal, between Lyons Lock and Lock Berlin, approximately 590 feet west of Studor's Bridge, in which the Walling struck the Bowen a glancing blow. Before the testimony was all taken, a petition of intervention was filed under admiralty rule 59, by claimants of the canal boats Follette and Walling, to extend this proceeding to include the canal boats Bowen, Costello, and McAvoy; the purpose thereof being to enable this court, if the evidence so warranted, to apportion the damages sustained by the cargo owners among the several canal boats found responsible for the collision. Later, the claimant and mortgagee of the Costello and McAvoy, and the owners of the cargo in their own behalf, filed intervening petitions, and after the entry of appropriate orders the various parties in interest, except the Bowen, which has not been arrested or has not appeared by claimant, are before the court.

The Bowen, Costello, and McAvoy, each 18 feet wide and 96 feet long (total length 288 feet), navigated as a so-called triple header; that is, they were lashed together in the order named, one directly to the rear of the other, and were in tow of four mules on a tow line of about 275 feet in length. The push boat Elmer D. Walling was rigidly fastened in front of the steam canal boat Nellie Follette, both steered by the same rudder and navigated as one boat, and carrying approximately 300 tons of borax; while to the rear of the Follette on a hawser 350 feet long were in tow three other canal boats against which no claim is asserted. The width of the canal at the place of collision from bank to bank was 75 feet, at the water line 70 feet; while at the bottom allowing for the slope wall, it did not exceed 55 or 60 feet.

For convenience I shall first pass upon the contention of the respondents that the Bowen and consort were negligently navigated, in consequence of which the mishap occurred. To make the bend—concededly a sharp one—considering the length of the tow, the narrowness of the channel, and the likelihood of other boats passing at this point, no doubt required careful attention on the part of Captain Van Order and the wheelsman Allen; and in my judgment the record sufficiently shows that in rounding the bend and edging slowly towards the towpath a proper degree of care and diligence was exercised by them. Allen, an experienced boatman, who was at the wheel of the Bowen at the time of the impact, substantially testified that when the driver of the mules shouted that boats were coming ahead, he worked the Bowen, which was then going at the rate of 1½ miles an hour, from the middle of the canal to within 9 or 10 feet of the visible bank, and straightened her up and held her parallel to the towpath, and that he then perceived that the Walling, which was well over on the heelpath side of the canal, was not following around the bend, but was coming ahead, and she continued to come ahead without changing her direction, and "cut square across on the towpath and ran into our boat, the Bowen." There is reliable testimony by other witnesses for libelants corroboratory of this version of the mishap.

It also appears that Captain Van Order, on hearing the whistle of the Follette, went to the tiller of the McAvoy to assist in keeping the boat straight while the west-bound boats passed; but the evidence does not show, as contended by respondents, that the tiller of the McAvoy was swung by Captain Van Order in such a way as to kink the tow or to embarrass the boats in their movements. The testimony of the witness Fredette to the effect that the consort of the Bowen was in a so-called double kink is not credited. He was too far away at the time to make accurate observations, and, as the collision was then fairly imminent, his attention must have been distracted by the obvious danger. In the absence, therefore, of convincing evidence that the Bowen and consort were out of alignment, or that the Bowen projected beyond the middle of the canal, I am disinclined to hold the tow in any measure responsible for the accident, or to attribute to it fault for mismanagement.

Nor is there sufficient evidence upon which to predicate the unseaworthiness of.the Bowen, for, although she was nearly 19 years old and needed repairing, she was nevertheless staunch enough to have safely completed her journey, and would not have sunk, had she not been struck by the Walling. Granting, however, that her condition were weakened, the principle applicable in cases of ordinary contacts between boats in a weakened condition plying in congested slips and channels is not applicable under the circumstances of the case at bar. The opening of the seams in her sides and bottom was due in part to the squeezing she received at the time of the impact, as well as to the swelling of her cargo of corn after becoming water-soaked.

The allegation in the libel that the Walling and Follette were primarily to blame for the collision may now be considered. The proofs are that the Follette grounded on the heelpath side of the canal just before the collision. It is substantially alleged in the answer that, upon perceiving that the Bowen and consort were navigating in the middle of the canal, the Follette immediately reversed her engine, and backed until her stern went aground on the berm bank of the canal, and that "while grounded in this position the Bowen negligently and carelessly and without regard to the position of the Nellie Follette and the Elmer D. Walling needlessly came into contact." There is much testimony by expert witnesses for libelants in support of the asserted grounding of the Follette and the sheering of the Walling. Six witnesses stated under oath that the Walling failed to follow the bank around the bend, but crossed diagonally over from the heelpath to the towpath side; and although an equal number of witnesses contradict such testimony, still I am satisfied by the evidence in its entirety that the Walling and Follette were improperly navigated, and that the collision could have been avoided either by earlier stopping headway or by the exercise of a proper degree of care and precaution in rounding the bend.

In my judgment the Follette was in fault for not going over to the heelpath side of the canal immediately upon coming to the bend and sighting the Bowen. Had she done so, the probabilities are that she would not have grounded, and that the Walling would not have

swerved across the canal. Fredette testified that he ported the wheel of the Follette when the Bowen and consort were about 350 feet away, and that she responded to her wheel, going to within 16 feet of the heelpath bank; but Captain Jewell puts the bow of the Walling at this time at 30 feet and the stern of the Follette at about 15 feet from the heelpath. It would seem to be clear that the steamer found it necessary to hurriedly go close to the heelpath bank in her attempts to avoid the collision, and in so doing grounded, causing the Walling, as heretofore pointed out, to sheer into the Bowen.

It is unnecessary to further allude to the testimony contained in the voluminous record, or to point out discrepancies therein. To my mind the duty of the steamer Follette and the Walling was plain and simple, namely, to keep safely to the heelpath side of the canal in rounding the bend and out of the way of the Bowen and consort. Their joint failure to do so was the primary cause of the impingement, which was obviously inexcusable and should have been avoided. This conclusion renders it unnecessary to pass upon any of the other questions presented and argued at the bar.

A decree may be entered, holding the steamer Follette and the push boat Walling alone in fault for the damages sustained.